uity. The Thomas Melville (D. C.) 31 Fed. 486; Gubbins v. Laughtenschlager (C. C.) 75 Fed. 615. These rules have recently been restated in our own circuit in The Minnetonka, 146 Fed. 509, 77 C. C. A. 217, and The Hamilton, 146 Fed. 724, 77 C. C. A. 150.

The amendment here prayed for is most substantial. I incline to think it changes the cause of action, and am sure it does not conform to the proof. If libelant had originally pleaded that the charter party was made by it as trustee for the Dumois Nipe Company, the contract, nevertheless, would have been that of libelant, and not that of its cestui que trust; and, though the fruits of any action for breach thereof would have inured to the benefit of the Dumois Nipe Company, such breach, if usable as a basis for action, must have been an infraction by ship or owner of the contract made with libelant, and not with its cestui que trust. If, therefore, the Cuba Planters' Company were a trustee, it alone could sue for breach; but that company suffered no damage, as positively sworn to by Mr. Dumois. In truth, the testimony already taken shows that it was not a trustee, but merely a selling agent, as also clearly sworn to; and from these vital statements Mr. Dumois cannot be permitted to depart, or contradict his own testimony by trying to show, in the language of the amendment, that libelant "is accountable to said Dumois Nipe Company for the" bananas in question.

The reason for a trustee being entitled to recover damages which do not fall upon his private purse is that he has the legal title to that which is injured; but it is impossible to read Mr. Dumois's frank statements, made in entire ignorance of the legal effect thereof, without feeling that libelant never had the legal title to said bananas. It is thus clear that what this motion really seeks is, not to make the pleadings conform to existing proof, or merely to change the title or capacity of the libelant and recover on testimony already adduced (The Hamilton, supra; Morgan v. Halberstadt, 60 Fed. 592, 9 C. C. A. 147; Van Doren v. Pennsylvania R. R. Co., 93 Fed. 260, 35 C. C. A. 282), but first to change the pleadings by putting the cause of action into the ownership of another legal entity, and then endeavor to vary or explain away material evidence by further testimony. Such a proceeding I think entirely without warrant or precedent and beyond the power of any court.

The motion to amend is therefore denied.

---

## In re BALL.

(District Court, E. D. New York. November 1, 1907.)

1. BANKRUPTCY—INVOLUNTARY PETITION—SUFFICIENCY.

The statements made in a petition in involuntary bankruptcy in accordance with the form prescribed by the rules in bankruptcy, in which the petitioners "represent" certain facts to be true, are of matters which must necessarily be alleged on hearsay, and do not purport to be of facts to which the petitioners make oath as personal witnesses, and hence the statement in the petition that it is made on information and belief does not add to nor detract from the strength of the allegations made, nor is a statement, in the verification, that affiants believe the matters so alleged

on information and belief to be true, ground for dismissing the petition, although improper in form.

**2. SAME—ACTS OF BANKRUPTCY—PAYMENTS MADE WITH INTENT TO PREFER CREDITORS.**

A petition in involuntary bankruptcy is not demurrable because the alleged acts of bankruptcy consisted of the making of numerous small payments to creditors by the defendant while insolvent, since the effect of such payments was to give preferences, and such effect must have been known and intended by the debtor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 72–74.]

In Bankruptcy. On demurrer to petition.

David H. Solotaroff, for bankrupt.

Simon Rasch, for petitioning creditors.

CHATFIELD, District Judge. A demurrer was filed to the original petition in bankruptcy herein, on the ground that the petition was indefinite and merely in the language of the statute. Under direction of the court, an amended petition was filed, to which a demurrer has been interposed, upon the ground that, "upon the face thereof, the facts alleged in the amended petition do not constitute acts of bankruptcy." In support of the demurrer, argument has been made as to the sufficiency, as to form, of the various allegations, and of the verification. It is apparent that this ground of objection is not included within the scope of the demurrer as filed, but, the argument having been made, and answered by the attorney for the petitioning creditors, it will be considered first.

The precise language of the allegation in each instance is that:

"Your petitioners further show that the said alleged bankrupt is insolvent, and that within four months next preceding the date of the original petition herein, * * * and while insolvent, committed an act of bankruptcy, in that, as your petitioners are informed and verily believe, that the said alleged bankrupt, while insolvent, * * * with intent to hinder, delay, and defraud his creditors, and with the intent and purpose of giving preference * * * upon an alleged antecedent indebtedness, * * * made a payment of money * * * with intent," etc.

There are some 22 instances of this character alleged, and the allegation is also added that the petitioners are informed and verily believe that the said alleged bankrupt within four months next preceding the date of the filing of the petition herein " * * * did transfer, conceal and remove part of his assets and property," etc. The verification is as follows:

" * * * Being duly sworn, deposes and says: That he is a member of the firm of ———, one of the petitioners mentioned in and described in, and who have subscribed the foregoing petition; that the members of the said firm are * * * ; that the foregoing petition has been signed by deponent for and with the authority of said firm of petitioners, and that deponent has personal knowledge of the facts contained in the foregoing petition and makes solemn oath that said facts are true, excepting as to those matters stated to be alleged on information and belief, and as to those matters he believes it to be true."

Under the authority given by the bankruptcy statute, certain forms were adopted and promulgated by the Supreme Court of the United

States upon the 28th day of November, 1898, to take effect January 2, 1899, of which the fifth form provides for a creditor's petition in involuntary bankruptcy. The particular allegation in this form relating to the point raised here is as follows:

"And your petitioners further represent that said ——— is insolvent, and that within four months next preceding the date of this petition the said ——— committed an act of bankruptcy, in that he did heretofore, to wit, on the ——— day of ———."

The petition is to be followed by a verification:

"United States of America, District of ———.—ss.: ———, ———, ———, being three of the petitioners above named, do hereby make solemn oath that the statements contained in the foregoing petition subscribed by them are true."

It would seem from the language of the prescribed form that a petition in involuntary bankruptcy is looked upon in the same light as a complaining affidavit in the matter of a criminal charge. The language "your petitioners further represent that" is the statement of a conclusion and of an allegation which it is apparent must in all cases be made upon hearsay, information, and knowledge derived from sources other than the actual personal knowledge of the party making the petition. The language of the verification is to the effect that the petitioners swear that the statement made by them is true. This statement is that they "represent" or allege to the court the doing of certain things by the alleged bankrupt. The affiant swears that he charges certain acts against the bankrupt, and he implies that he has verified them so as to be willing to stand by the consequences of his charge. He is not testifying as to what he has seen or done. The verification is not equivalent to an oath that the person making the verification has actual knowledge that certain acts were done because they occurred in the presence of the petitioner. The oath is not subject to the rules of competency with respect to hearsay testimony. On this account, the insertion of the words in a petition that it is made upon information and belief neither add to nor detract from the strength of the allegation, and likewise in the verification the additional statement, that the petitioners believe the matters which are stated to be alleged upon information and belief to be true, is mere surplusage, and, while the language should not be used, it is no ground for dismissing the petition. The cases cited are not, in the opinion of the court, in contradiction of this view.

As to the other objection raised, that each of the payments were small in amount and made in the ordinary course of business, and that this would indicate that the alleged bankrupt was attempting to pay his debts instead of creating a fraudulent preference, it is only necessary to say that the character of the payments, and the smallness of their amounts, certainly do seem to indicate that the bankrupt was paying his current incidental debts, as he had the opportunity and funds so to do. Nevertheless, if he was insolvent, and if he made each of these respective payments with a knowledge that he could not at that time pay his other creditors whose claims were due, and with the additional knowledge that each of these payments was in

effect a preference, although the bankrupt actually expected to defraud no one, and hoped to pay his debts in full, the acts alleged come within the provisions of the bankruptcy statute.

The demurrer, therefore, will be overruled, and the matter will take the regular course.

---

## In re WILCOX.

### (District Court, W. D. Michigan, S. D. June 15, 1907.)

BANKRUPTCY—FEES OF REFEREE—SERVICES RENDERED ON APPLICATION FOR DISCHARGE.

> Under Bankr. Act July 1, 1898, as amended in 1903 by adding section 72 (Act Feb. 5, 1903, 32 Stat. 800, c. 487, § 18 [U. S. Comp. St. Supp. 1907, p. 1033]), providing that "neither the referee nor the trustee shall in any form or guise receive, nor shall the court allow them, any other or further compensation for their services than that expressly authorized and prescribed in this act," the court has no power to allow special compensation to a referee for services rendered on a reference to him of a contested application for discharge as authorized by general orders in bankruptcy No. 12.

In Bankruptcy.

KNAPPEN, District Judge. Objections having been filed to the bankrupt's discharge, the matter was referred to the referee, who now asks for special compensation for his services under that reference. The sole question presented is whether the statute permits special compensation for such service.

The original bankruptcy statute provided that referees should receive as full compensation for their services a fee of $10, plus a commission of 1 per cent. on sums paid as dividends and commissions, or one-half of 1 per cent. on amounts paid creditors under composition. Bankr. Act July 1, 1898, 30 Stat. 556, c. 541, § 40 [U. S. Comp. St. 1901, p. 3436]. Under this section it was held in at least two reported cases that the referee was entitled to additional compensation for services under a reference of this nature upon the ground that the referee acted in such case as a special master. Fellows v. Freudenthal, 102 Fed. 731, 42 C. C. A. 607; In re Grossman (D. C.) 11 Fed. 507. The contrary was held in Re Troth (D. C.) 104 Fed. 291. But for the statute of 1903 I should be inclined to hold that the referee is entitled to extra compensation for this class of services. The fees given by the statute of 1898 were generally regarded as inadequate, and in several districts it seems to have been the practice, by one method or another, to provide for additional compensation to referees. In 1903, however, the bankrupt act was amended by increasing the referee's fee to $15, and providing for an additional fee of 25 cents for every proof of claim filed for allowance, and extending the 1 per cent. commission to all moneys disbursed to creditors by the trustee. The amending act of 1903 contained this express condition:

> "Sec. 72. That neither the referee nor the trustee shall in any form or guise receive, nor shall the court allow them, any other or further compensation