## In re ROSEN'S ESTATE.

### ROSEN v. HINTON.

(Circuit Court of Appeals, Seventh Circuit. January 27, 1920.)

No. 2557.

1. BANKRUPTCY ⟨⟩228—FINDINGS OF REFEREE PRESUMPTIVELY CORRECT.
    Findings of fact by a referee should not be disturbed, except where it is plainly demonstrated that a mistake has been made.

2. BANKRUPTCY ⟨⟩136(2)—BANKRUPT ENTITLED TO SHOW CAUSE BEFORE COMMITMENT FOR CONTEMPT.
    On failure of a bankrupt to comply with an order to turn over money or property to his trustee within the time limited, he should be cited to show cause before being committed for contempt.

Petition to Review and Revise an Order of the District Court of the United States for the Western District of Wisconsin.

In the matter of Jacob Rosen, bankrupt; W. W. Hinton, trustee. On petition of bankrupt to revise order of District Court. Modified.

Joseph A. Padway and A. W. Richter, both of Milwaukee, Wis., for petitioner.

Albert K. Stebbins, of Milwaukee, Wis., for respondent.

Before BAKER, ALSCHULER, and PAGE, Circuit Judges.

PAGE, Circuit Judge. This is an original petition, by Jacob Rosen, to review and revise an order in the District Court of the United States for the Western District of Wisconsin, directing him to pay his trustee in bankruptcy $1,900.47 within 15 days, and that in default thereof said Rosen be committed to jail.

Rosen came to this country from Russia. By thrift and industry he became, in a few years, a retail merchant in Milwaukee. In February, 1915, he moved to Sparta, Wis. His inventory showed that he then had $4,300 in goods and some fixtures, and owed only $720. After he had been in Sparta something less than 8 months, during which time

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

he had sold at least $13,000 worth of goods, he was adjudged a bankrupt, with debts probably in excess of $10,000, and with disclosed available assets of about $7,000.

There were repeated and full hearings and examinations of the bankrupt and other witnesses, and thereafter, in January, 1916, the trustee, W. W. Hinton, filed his petition, asking that Rosen be required to turn over to him $9,100 in money or merchandise. December 15, 1916, the referee, after a hearing, made his report, and directed Rosen to turn over the sum of $3,198.30 in money or merchandise to the trustee. That report was approved by Judge Sanborn April 14, 1917. June 6th the trustee filed his petition, showing that Rosen had not complied with the said order, and asked for an order requiring Rosen to show cause why he should not be committed for contempt. The hearing had thereon was broadened into an inquiry as to the correctness of the amount found by the referee. September 13, 1917, Judge Sanborn entered the order here complained of, allowing Rosen two further credits, but in all other respects ratifying and affirming the finding of the referee.

The record brings here the referee's report and the various petitions and orders subsequent thereto, but contains no evidence other than Judge Sanborn's notes taken at the hearing before him.

[1] Petitioner claims that the referee's report shows that there was no evidence to justify the charge against him of the full amount of the Milwaukee inventory, $4,300, but that the subsequent evidence, taken before Judge Sanborn, shows that no more than $2,150 should have been so charged. The report shows that much testimony was taken, and that the question now raised was before the referee. The trouble seems to be, not that there was no evidence, but that the referee found:

"The testimony given by the bankrupt in this case is so conflicting and indefinite and confusing that no reliance can be placed upon it by any one."

The findings of fact by the referee and the ultimate findings of Judge Sanborn were most favorable to the bankrupt. It is a well-established rule that the findings of a referee should not be disturbed, except where it is demonstrated a plain mistake has been made. Epstein v. Steinfeld, 210 Fed. 236, 127 C. C. A. 54; Baker v. Bishop-Babcock-Becker Co., 220 Fed. 657, 136 C. C. A. 265; Schmidt v. Rosenthal, 230 Fed. 818, 145 C. C. A. 128.

[2] Judge Sanborn ordered Rosen to pay over $1,900.47 within 15 days, and in the same order directed that in default thereof Rosen should be committed to jail. Inasmuch as Judge Sanborn saw fit to reduce the amount theretofore required to be paid by Rosen, he was entitled to a reasonable time thereafter in which to pay, which was given. Whether he should be held in contempt for failure to make such payment must have necessarily depended upon conditions existing at the expiration of that time. Re Baum, 169 Fed. 410, 94 C. C. A. 632.

The order should be modified, by omitting that part which directs that the bankrupt, if he is in default in making said payment within 15 days, shall be committed to the county jail. The District Court is

263 F.—45

directed to enter an order, requiring the bankrupt, within 15 days after notice to him of the filing of the mandate in the District Court, to show cause why he should not be punished for contempt for failure to comply with the order of the District Court.